And we will now hear U.S. v. Silva and U.S. v. Bates. We have identified these two cases as raising, at least from our point of view, the same issues, so we would like to have counsel help us sort that out. We will first start, if we are ready, we will first start with counsel for Mr. Silva. Steve Havacek Good morning, Your Honor. Steve Havacek and Holly Sullivan on behalf of Mr. Silva and Mr. Bates. Your Honor, this issue is an issue that was left open in the Ameline en banc decision. The Ameline en banc majority opinion simply did not address the implications of an Ameline remand with respect to the right to allocution. And that right is a substantial one, dating back to 1689, protected both by the common law pre-Constitution and the Constitution itself, as well as Rule 32. Kennedy Well, I don't think there is any doubt that the right of allocution applies at a sentencing or at a resentencing. But an Ameline remand involves neither, does it? Havacek An Ameline remand is not a full sentencing. But because the Ameline remand Kennedy Is it a sentencing at all? Havacek Yes. It is not a full sentencing. But 3742F1, which is the statute that was cited in Ameline as the basis for the remand, provides an authority on the part of a court of appeals to remand for only one purpose. And that purpose is a sentencing proceeding. And that's explicitly set out in the language. Kennedy Now, does that trump the language of our Ameline decision? Havacek I think it's entirely consistent with the language of the Ameline decision. But the bottom line is, is Congress set out what the authority was under that statute. And it says basically at F1, the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines. The court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate. It's basically ---- Ginsburg Think the dissent made that argument and it was rejected by the majority in Ameline. Havacek I don't ---- the dissent was extremely well crafted and made a lot of arguments that perhaps were not fully adopted by the majority. But I don't think the majority contradicted the dissent in that ---- in the respect of the basis for the remand. The basis for the remand is F1, and that's the same basis that they used in Crosby. So whatever it is that we're doing in Ameline remand, it is a sentencing proceeding. Ginsburg Right. But I think the dissent pointed out that that was the ---- both the Second Circuit and the Ninth Circuit was ---- were reading that language incorrectly, and yet that remains the role in the Ninth Circuit, that the power to do this limited remand where they're actually asking the district court to perform the appellate function came from this section. Now, you're just arguing that they're wrong. I agree with you. I think the majority was wrong. But I don't see how your argument flows from what they did. I think that there really are two different points. Point number one is, can you do what Ameline's majority did under 37F1? I think no, and Your Honor thinks no, but the majority thought yes. But whatever it is that they did under F1 can't be anything other than a sentencing proceeding. So, you know, maybe what they did was wrong, and that if the Supreme Court were ever to take this, they would say that, well, what you ordered really isn't authorized by F1. But right now, we have the Ameline majority, which is the law of the circuit, saying that F1 authorizes this proceeding. But F1 authorizes only one thing, and that is a sentencing proceeding. So ---- Kennedy So are you suggesting that the Ameline majority opinion was wrong based on the statute? No. What I'm suggesting is that whatever it is that Ameline ordered, it is a sentencing proceeding. Kennedy No, that is my question. Are we in a position as a three-judge panel to say the majority of Ameline was wrong in their statement because it has to go back for sentencing? No. No, certainly not. And the point that I'm trying to make is different than that. What I'm saying is, you obviously can't disagree with what an en banc majority said. What my point is, is that what they ordered is not a full sentencing, but it is a sentencing proceeding. Because that's the only thing ---- Kennedy Let's say the en banc majority said that this goes back to do this and it's not a resentencing. Right. But that's what they said. They said it's not a resentencing. Kennedy So how can we call it a resentencing? I'm not asking you to. What I'm asking you to call it is what the statute calls it, which is a sentencing proceeding. I'm not saying that it's a full resentencing. I'm not saying that we have a right to present evidence, to file objections to the pre-sentence report and all those things. What I'm saying is, is that this is a sentencing proceeding. It's a carved-out portion of a full sentencing. And the carved-out portion asks the Court to consider the traditional sentencing factors that defendants have spoken to since 1689. And I think that this Court's recent decision in Montgomery, which I sent up in a letter earlier, makes that point. It says, look, that's what courts are doing on Ammaline remands, is they're considering the 3553A factors. And it makes the specific point that the comments of counsel are necessary to that determination. And I think Boardman v. Estelle basically establishes that if the comments of counsel are necessary, then the comments of the defendant are also necessary. Roberts Don't we get kind of a hint when the Ammaline majority says we're sending it back the way Crosby, for the Crosby type, and Crosby holds there's no right of allocution? Jay Carr Well, Crosby does hold that, but that is an area where there's a divergence between Ninth Circuit law and Second Circuit law. Roberts Don't is there a divergence when the en banc court adopts the Crosby procedure and Crosby says there's no right of allocution? Jay Carr If the en banc panel in Ammaline had said, we agree with Crosby as to the argument, and I don't think you would have been able to do that. Roberts Don't Of course. And it didn't go through and point out each issue in Crosby. It said it agreed with the Crosby proceeding. The Crosby proceeding doesn't allow allocution. I'm just a little tentative about telling the en banc majority that they were wrong. Jay Carr Well, I don't want you to tell them they're wrong. I want you to tell them that they didn't address this issue. And, in fact, the dissent that they did not address the issue of allocution. And, in fact, that's one of the points that Judge — Roberts Don't So, in the case that does adopt the allocution, do they have to say we adopt Crosby? And we mean the allocution, too. Jay Carr I think that they do. Roberts Don't They do have to say that. Jay Carr And — Roberts Don't So, all of the elements of steps in Crosby, the adopt and allocution, your point is they have to specifically go to each step. They can't just say we adopt the procedure. Is that your point? Jay Carr My point is, is that when we're talking about a fundamental constitutional right, if the Court, if the majority wanted to say that we're cutting that off, then they would have done so. And I would point out that the portion of Judge Wardlaw's dissent that was — that was joined by Judge O'Scanlan makes the point that defendants are going to appeal on the allocution issue. And that's at, I think, page 1,096. Roberts I understand that. But weren't we outvoted? Kennedy You'll have to excuse the person who wasn't on the in-bank court for raising the question. But it strikes me that if — if Crosby is adopted, you have to take all of Crosby unless the Court says, no, we mean procedures similar to or something such as that. Jay Carr Well, the Supreme Court's decision in Texas v. Cobb says that fundamental constitutional rights are not decided by implication from opinions that don't address them. You know, I did one of those Westlaw searches, you know, allocute, exclamation point. That word never appears in the majority opinion. So we're talking about a fundamental constitutional right. This Court adopted that position in Borden v. Estelle that dates back to 1689. You've got an opinion that doesn't use the word allocution. You've got a dissent that says defendants are going to appeal on the allocution issue because of your decision, and they don't respond to the dissent. That, to me, indicates — and plus, the counsel, I was counsel in Ameline, argued that there was a serious problem with allocution with respect to the procedure that they're going to adopt. They don't address it. They don't address it at all. And I don't think you can draw anything from that other than that they're thinking that's a decision that we're going to leave for another day. And, in fact, they say in their opinion, we can't address all of the issues that are going to come up in the wake of Booker, so we're not going to. We're limiting it. I thought you were going to make another argument and argue that the whole limited Ameline remand is dicta, since it had to be reversed and vacated under Howard anyway, so we could do whatever we wanted with it. That — well, that was a real problem in the context of that case. But, you know, the Court said that when it gives a reasoned resolution of issues, even if it's not technically necessary, that it's part of the opinion. So I think it would be great if we would declare Ameline dicta. But I think what we should really do is say this is a fundamental right. It's not addressed in the majority opinion. And it could have been because it was brought up in the dissent. All right. Counsel, let me interrupt for just a second. You have co-counsel, Ms. Sullivan. Did she expect to share some of your time? There's only a minute left, so. Right. Well, I should perhaps do that because, of course, if the Court has any questions about the facts of her case. You may have a question from Judge Wardlaw. I just — I just wanted to ask, maybe what you're asking us to do is say something to the effect that Ameline didn't literally speak to this. And although it called it a limited remand, it is constitutionally not relevant how it was characterized, given that what the law says and what the right is, is something else, and it didn't address it. That's precisely my argument, that allocution is an irreducible due process minimum to a sentencing proceeding. I'm not saying I'm entitled to everything that goes on at a sentencing hearing. And Rule 32 lists a number of things that occur. I'm not saying I'm entitled to all of those. All I'm saying is, is that the Due Process Clause requires, at a minimum, the right to allocution. And whatever it is that you're doing in the district court on these remands, that right attaches because it goes to the traditional sentencing discretion that judges have exercised since 1689. Roberts. Counsel, your time has expired. I'll let Ms. Sullivan speak for a minute, if she wishes to use that. Thank you very much, Your Honor. Thank you. Good morning, Your Honors. Holly Sullivan on behalf of Clifford Bates. Your Honors, in Mr. Bates' case, I wanted to address one particular point. Mr. Bates has been released from custody at this time. He was released in June of this year. But I do not think that that takes place. But that's not moot. I mean, that doesn't necessarily moot this case as to him, does it? No, it does not, Your Honor. And that's the only point that I wish to address. Mr. Bates was placed on two years of supervised release. He had numerous conditions of supervised release that were given by the district  court. The majority of the conditions of supervised release that were imposed were conditions that under the sentencing guidelines under 5D1.3 are listed as some are mandatory conditions under statute, but other conditions are conditions that are solely recommended. And at the time that Mr. Bates was originally sentenced, those guidelines were taken into account by the district court. The district court now, of course, has more discretion under Booker to determine whether or not those guidelines should be considered and put into place. Thank you, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. My name is Jason Goldberg from the Southern District of California. I'm here to argue both the Silva and Bates cases on behalf of the government. I would suggest that this Court ---- On Bates, you don't disagree, do you? On the mootness issue, no, Your Honor. I would suggest that the Court approach this question in two stages. The first stage would be to ask what were the procedures to be followed as outlined in Ameline 3, and do those procedures require an allocution on a limited remand at the first stage of an Ameline remand before the district court judge decides whether or not he's going to have a new sentencing here. The second question would be along the lines of what Judge Wardlaw suggested during the initial argument is whether or not there's any constitutional problem with it if Ameline 3 provides that there should be no allocution at the first stage of the limited remand. On the first question, I think it's clear from the Ameline 3 opinion itself that the judge is entitled to make the first initial decision based on the briefs that are submitted by counsel for both parties and the record from the entire record from the prior proceedings in the case, and that he need not hold a hearing. And if there were any question left by that section of the opinion, procedures to be followed in the en banc opinion in Ameline 3, that question was resolved in the recent case of Montgomery, which was the subject of a 28-J letter that's been submitted by both parties to this Court. Well, both parties seem to cite Montgomery, but all it says to me when I read it is that there is an absolute right to have the views of counsel solicited. That's all it says. It says that it also refers to Crosby and says that while a hearing is optional, written submissions from counsel are mandatory. And I think that it's impossible to read either that section of Ameline 3 that says the procedures to be followed or the Montgomery decision as saying anything other than the Court is supposed to decide this first initial question at least at a minimum on the brief submitted by counsel and the parties setting forth their position. But it need not hold a hearing if it elects not to. Where does it say it need not hold allocution or a hearing? Well, in the section of the Montgomery opinion, I don't have the direct cite in front of me where it's discussing the Crosby opinion. It refers, it says, and this ---- And while a hearing is optional, the written submissions from counsel are mandatory. And if I have some time at the end of my presentation, I can find that section for your Honor and cite it for you. I think, however, when you look at either the section of the Ameline 3 opinion that says procedures to be followed or Montgomery or Crosby, which was the Second Circuit opinion that was adopted by the en banc majority in Ameline 3, it's plain that what the Court had in mind was we send it back to the district court to make this initial determination as to whether or not there's plain error. And if it decides that there is plain error, then we get the defendant present and we have a new sentencing hearing where all the rights of sentencing, including allocution, would pertain. But until the district court decides to have a new sentencing hearing, while he's making that initial determination under Ameline 3, then the rights attendant to sentencing don't apply. And the Court was plainly intending that the district court would have the right to make this decision based on the record of the case and the submissions of counsel. You know, the Ameline majority did not have this precise issue before it. And it didn't actually consider it and or address it in any way. And there may be, it seems to me that if you require the, under Montgomery, the voice of counsel, the views of counsel on the theory that the Court, what it's doing on the limited remand is necessarily considering all the allow him to exercise his right. It may just be something that is so fundamental to our Constitution that, since we know in practice now we have the benefit of the history and some experience with what the district court judges are doing, maybe Montgomery should be taken one step further. Well, I think, you know, why is allocution more important to the sentencing decision than the right to present evidence? Wouldn't it be more important to the ultimate outcome for the, to have the defendant have the right to call witnesses? Witnesses on what, though? I mean. Well, what would the defendant allocute to? So the defendant, the judge is making this initial determination under Ameline 3. And he has to decide whether or not his decision would be materially different under an advisory guideline system. One of the problems that Your Honor articulated with the Ameline 3 opinion was that it seemed to assign an appellate function to the district court. It's reviewing its own opinion based on the record of the initial sentencing case. What I, I failed to see what a defendant's allocution, his new plea for leniency has to do with the district court's analysis of the record of the existing case. If the district court is going to take new evidence and make new decisions about sentencing and hold a new sentencing hearing, absolutely the defendant should be present and have a right to allocate. But here the problem that you articulated with the Ameline 3 opinion is that it's assigning this plain error branch of the, sorry, the substantial rights branch of the plain error review to the district court. And if we're here and we have plain error review and the defendant has no right to be here, why should it be any different in front of the district court? Is this a practical consideration that is the government's concern? Because it would seem that given the fact that on the Ameline remand, the district court can consider formerly precluded or prohibited factors, that perhaps there might be some formerly prohibited or precluded factor that the defendant should be able to talk to the judge about. Sure, sure. In part, I think it's a practical problem. And as you know, defendants can be housed anywhere in the United States. So I do think that there are practical difficulties if on all of these Ameline 3 cases we're going to bring people back to allocate. But it's not those practical difficulties on which the government is relying for its position before this Court. I simply don't think that there was ever any intention that defendants would be given a right to allocate at this initial stage and that there's no constitutional problem with that. And, you know, so think of some of the oddities that would occur if the defendant had a right to allocate at this initial stage of an Ameline 3 remand. The defendant would have a chance then to allocate three times. He would allocate at the initial sentencing. And I understand that the situation at the initial sentencing is different than it would be post-Booker. He may have made a decision not to allocate at the original sentencing based on the mandatory nature of the guidelines. That's true. That's true. But then you would have him come back and allocate at the initial stage of an Ameline 3 remand where he's going to talk about whether or not the sentence would be materially different, this strange inquiry under the Plain Error Review. And then he's going to, assuming that the district court decides to hold a new sentencing hearing, he's going to allocate again. And I don't think that that's a procedure that was intended by the Court. I don't think it's a procedure that makes sense. I mean, whether or not the Ameline 3 train has left the station, this Court has decided that that branch, the third prong of the Plain Error Inquiry, is now the district court's to decide. And just as there's no constitutional right when this Court decides the third branch of the Plain Error Review to have the defendant present, to have the defendant appear before Your Honors and plead for leniency, there's no right when the district court makes that analysis either. And there would be no contribution of the defendant's allocution to the question that's actually before the district's court at that stage of the proceedings. So I think that when you review the Crosby, Montgomery, and Ameline 3 cases, allocation is not a part of the procedures that's been set forth by the government, set forth by the Court, that there's not a constitutional problem with that because the district court is not taking new evidence, not making new factual findings at the first stage of the Ameline 3 remand. What he's doing is examining that third prong of the Plain Error Review. And that if you did give the right to allocute, it's going to create all sorts of odd situations where the defendant is allocuting at a stage where his allocution has no meaningful bearing on the decision that's actually before the district court, and you're going to have the defendant allocuting over and over and over again and not necessarily at the stages where his allocation would be most appropriate to consider. I also want to address before I sit down the argument that because the statute authorizing a remand in this case uses the word sentencing proceeding, that automatically all the constitutional and, I would assume, statutory or procedural rights attendant to a sentencing, a full sentencing hearing, necessarily pertain under a limited remand under Ameline 3. And again, I think that's another train that's left the station already. This was an issue that was raised by the dissents in Ameline 3, and the Court held at a greater includes the lesser argument, that if we have the right to remand for full resentencing, we have the right to remand for preliminary proceedings that may or may not lead to full resentencing. So the case just argued will be submitted for decision, and the cases, I should say, that were both argued will be submitted for decision, and the Court will adjourn.
judges: Wallace, O'scannlain, Wardlaw